# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMUR SAFRANSKY, on behalf of himself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>FOSSIL GROUP, INC.; and FOSSIL STORES I, INC.,<br><br>                                    Defendants. | Case No.: 17cv1865-MMA (NLS)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 11] |

Plaintiff Timur Safranksy ("Plaintiff") filed a First Amended Class Action Complaint ("FAC") against Defendants Fossil Group, Inc. and Fossil Stores I, Inc. (collectively, "Defendants"), alleging violations of California's Unfair Competition Law, Business & Professions Code § 17200 *et seq.* ("UCL"), False Advertising Law, Business & Professions Code § 17500 *et seq.* ("FAL"), and Consumer Legal Remedies Act, Civil Code § 1750 *et seq.* ("CLRA"). *See* FAC. Defendants move to dismiss Plaintiff's FAC for failure to state a claim and lack of standing pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. No. 11. Plaintiff filed an opposition to Defendants' motion, to which Defendants replied. Doc. Nos. 13, 14. The Court found the matter suitable for determination on the papers and without oral argument pursuant to

Civil Local Rule 7.1.d.1.  Doc. No. 18.  For the reasons set forth below, the Court **DENIES** Defendants' motion to dismiss.

BACKGROUND[1]

Plaintiff Timur Safransky is an individual and resident of San Diego County, California.  FAC ¶ 25.  Defendant Fossil Group, Inc. is a Delaware corporation with its principal place of business in Richardson, Texas.  *Id.* ¶ 26.  Defendant Fossil Stores I, Inc. is a Delaware corporation with its principal place of business in Richardson, Texas.  *Id.* ¶ 27.

On November 16, 2016, Plaintiff visited the Fossil Outlet Store located at the Carlsbad Premium Outlets in Carlsbad, California.  *Id.* ¶ 34.  Plaintiff "observed a large exterior window display that advertised 'Entire Store Up To 40% Off' and an additional '20% Off' the entire purchase."  *Id.*  Once Plaintiff entered the store, he noticed "prominent" signage on top of or near almost each piece of merchandise advertising a "discounted % off," or a "discounted whole-price" reduction for each item offered for sale.  *Id.* ¶ 35.  Believing that he was able to pay significantly less than the price listed on the price tag, Plaintiff purchased an item.  *Id.*  Specifically, Plaintiff purchased a Travis Workbag "bearing a Reference Price of '$198.00' on the price tag" after observing a sign which indicated that the bag was on sale for "40% Off Ticketed Price."  *Id.* ¶¶ 36-37.  Plaintiff attaches as Exhibit E a true and correct copy of the price tag attached to the Travis Workbag.  *Id.* ¶ 36; *see also* FAC, Exh. E.  Notably, the price tag says "LIKE STYLE" below the $198.00 figure.[2]  Relying on this advertising, Plaintiff purchased the bag.  *Id.* ¶ 38.

Upon check-out, Defendants provided Plaintiff with a sales receipt containing the

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the FAC.  *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[2] The Court hereinafter refers to the price tags attached to items for sale at Defendants' stores as the "Like Style tags."

-2-                                    17cv1865-MMA (NLS)

allegedly misrepresented price. *Id.* ¶ 39. Specifically, the receipt states "REGULAR PRICE" in large, all-caps lettering directly below the name of the item "TRAVIS WORKBAG." FAC, Exh. F. The regular price corresponds with the $198.00 figure. *See id.* With a 40% discount, and an additional 20% off of the entire purchase price, Plaintiff paid a total of $102.64. *See id.*

Plaintiff alleges that Defendants intentionally misrepresent prices for items with the Like Style tags because such prices are "overstated and d[o] not represent a bona fide price at which Fossil Outlet Products were previously sold." FAC ¶ 6. Additionally, Plaintiff alleges that the advertised prices on the Like Style tags were never the "prevailing market retail price within the three months immediately preceding the publication of the advertised former prices, as required by California law." *Id.* The prices listed on the Like Style tags are "fictional creations intentionally designed to enable Defendants' phantom markdowns." *Id.* ¶ 7. Further, Plaintiff claims that the "Fossil Outlet Products sold at Fossil Outlet Stores are designed and manufactured for, and sold *exclusively* by, those stores[.]" *Id.* ¶ 40 (emphasis in original). The Fossil Outlet Products "were never sold—or even intended to be sold—at the Reference Price advertised on the price tags." *Id.* Plaintiff contends that he and other consumers "have no realistic way to know which—if any—of Defendants' price tags and sale prices are not false or deceptive." *Id.* ¶ 49.

After Plaintiff purchased the Travis Workbag, Plaintiff conducted an investigation which revealed that Defendants "very subtly mark the items exclusively made for the Fossil Outlet Stores by including in smaller font the words 'Like Style' on the price tags attached to the Fossil Outlet Products." *Id.* ¶ 28. Plaintiff asserts that Defendants "intentionally designed the price tags this way so that their employees would be able to determine internally within the company those products that were made exclusively for the Fossil Outlet Store." *Id.*

Plaintiff brings this action "on behalf of himself and other similarly situated consumers who have purchased one or more Fossil Outlet Products at Fossil Outlet

Stores in California that were deceptively represented as discounted from false former prices[.]"[3]  *Id.* ¶ 21.  Plaintiff seeks to "halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased such products."  *Id.*  Plaintiff seeks restitution and other appropriate equitable remedies, including an injunction under the UCL and FAL, and restitution, damages, and an injunction under the CLRA.  *Id.*  Defendants move to dismiss Plaintiff's FAC on the grounds that Plaintiff lacks standing under Rule 12(b)(1), and fails to allege sufficient facts under Rule 12(b)(6) as well as Rule 9(b)'s heightened pleading standard.  *See* Doc. No. 11-1.

## LEGAL STANDARDS

### A.  Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "If the challenge to jurisdiction is a facial attack . . . the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made."  *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167 (E.D. Cal. 2012) (internal citation and quotation omitted).  "Lack of standing is a defect in subject-matter jurisdiction and may be properly challenged under Rule 12(b)(1)."  *Wright v. Incline Village Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1199 (D. Nev. 2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

---

[3]  Plaintiff expressly excludes any Fossil Outlet Products sold at Fossil Outlet Stores that advertised a price that was a prevailing market retail price within three months preceding. *See id.* ¶ 28.

**B.     Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

**C.   Rule 9(b)**[4]

In alleging fraud or mistake, the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Failure to satisfy this heightened pleading requirement can result in dismissal of the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In general, the plaintiff's allegations of fraud or mistake must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106. This heightened pleading standard requires the plaintiff to allege fraud or mistake by detailing "the who, what, when, where, and how" of the misconduct charged. *Id.* at 1106–07. In other words, the plaintiff must specify the time, place, and content of the alleged fraudulent or mistaken misconduct. *See id.* However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Moreover, "Rule 9(b) 'may be relaxed as to matters within the opposing party's knowledge.'" *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting *Moore v. Kayport Packaging Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). "In those cases, a 'pleading is sufficient under Rule 9(b) if it identified the circumstances constituting fraud so that a Defendant can prepare an adequate answer from the allegations.'" *Id.* (quoting *Moore*, 885 F.2d at 540).

## DISCUSSION

**I.    Motion to Dismiss Pursuant to Rule 12(b)(1)**

As an initial matter, Defendants argue that Plaintiff lacks standing for three reasons: (1) Plaintiff lacks statutory standing because he has failed to allege reliance on the phrase "Like Style"; (2) Plaintiff lacks statutory standing to assert claims on behalf of purchasers who bought different Fossil Outlet products than the Travis Workbag; and (3)

---

[4]  The parties acknowledge that Rule 9(b)'s heightened pleading standard applies to Plaintiff's claims.

Plaintiff lacks Article III standing to seek injunctive relief because he is "no longer at risk of being deceived by Fossil's 'Like Style' pricing." Doc. No. 11-1 at 8. The Court addresses Defendants' arguments in turn.

### 1. Plaintiff's Statutory Standing to Assert Personal Claims

First, Defendants contend that Plaintiff lacks statutory standing under the UCL, FAL, and CLRA because he does not allege reliance on the phrase "Like Style" that appeared on the price tag of the Travis Workbag that he purchased. *See* Doc. No. 11-1 at 11. Thus, Defendants claim that Plaintiff has not sufficiently alleged that he relied on the alleged misrepresentation. *See id.*

"Standing under the UCL and FAL is . . . limited to any person 'who has suffered injury in fact and has lost money or property' as a result of unfair competition." *Azimpour v. Sears, Roebuck & Co.* ("*Azimpour I*"), No. 15-CV-2798-JLS-WVG, 2016 WL 7626188, at *3 (S.D. Cal. Oct. 17, 2016) (quoting Cal. Bus. & Prof. Code §§ 17204, 17535). In *Hinojos v. Kohl's Corp.*, the Ninth Circuit held that "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury." 718 F.3d 1098, 1107 (9th Cir. 2013). Further, the Ninth Circuit "conclude[d] that any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement, *a fortiori*, have suffered 'any damages' for purposes of establishing CLRA standing." *Id.* at 1108 (emphasis in original).

Here, Defendants' argument that Plaintiff fails to allege that he relied on the words "Like Style" is misplaced. It is Defendants' alleged pricing scheme—the juxtaposition of the price listed on the Like Style tags and the in-store signage representing a certain percentage discount—that Plaintiff challenges. Plaintiff alleges that he relied on Defendants' misrepresentations when making his purchase. Specifically, Plaintiff purchased the Travis Workbag, bearing a price of "'$198.00' on the price tag," after observing "signage above the subject item that advertised a percentage discount, clearly

indicating that the item was being sold at a significant discount off the Reference Price." FAC ¶¶ 36, 37. The signage above the Travis Workbag "represented that the bag was on sale for '40% Off Ticketed Price.'" *Id.* ¶ 37. Plaintiff asserts that he relied on Defendants' advertising and "believ[ed] that he was receiving a significant discount," so he "decided to purchase the item[.]" *Id.* ¶ 38. However, Plaintiff claims that he did not actually receive a discount because "the prevailing market retail price for the subject bag during the three months immediately prior to Plaintiff's purchase of the item was never at the represented former Reference Price." *Id.* Moreover, "Plaintiff would not have purchased the bag in the absence of Defendants' misrepresentations." *Id.* Taking Plaintiff's allegations as true, Plaintiff has sufficiently alleged that he suffered economic injury as a result of Defendants' conduct. Thus, the Court finds "[s]uch allegations satisfy reliance as to Plaintiff's in-store purchase." *Azimpour I*, 2016 WL 7626188, at *4.

Accordingly, the Court finds that Plaintiff has statutory standing to assert his personal claims. *See Rubenstein*, 687 F. App'x at 566 ("Rubenstein has both Article III and statutory standing because she sufficiently alleged economic injury and actual reliance on the Compared To prices affixed to the goods she purchased at Neiman Marcus's Last Call store."); *see also Covell v. Nine West Holdings, Inc.*, No. 17-CV-1371-H-JLB, 2018 WL 558976, at *5 (S.D. Cal. Jan. 25, 2018) (concluding that the plaintiff has statutory standing because she alleges that she only purchased the shoes because she believed she was receiving a significant discount, did not in fact receive a discount, and would not have purchased the shoes but for the allegedly deceptive price tags).

2. Plaintiff's Standing to Represent Individuals Who Purchased Different Items

Second, Defendants assert that Plaintiff lacks statutory standing to assert claims on behalf of customers "who purchased different items, at different prices, and with different 'Like Style' comparisons." Doc. No. 11-1 at 6. In response, Plaintiff contends this inquiry should be conducted at the class certification stage. *See* Doc. No. 13 at 7. Moreover, Plaintiff asserts that he "has standing to sue for all products on behalf of all

consumers who were exposed to the same, uniform pricing scheme, regardless of the type of product purchased." *Id.* at 11.

"In the Ninth Circuit, there is 'no controlling authority' on whether a plaintiff in a class action has standing to assert claims based on products he did not purchase." *Dennis v. Ralph Lauren Corp.*, No. 16-CV-1056-WQH-BGS, 2017 WL 3732103, at *6 (S.D. Cal. Aug. 29, 2017) (quoting *Morales v. Unilever U.S., Inc.*, No. 13-CV-2213-WBS-EFB, 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014)). However, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Cortina v. Goya Foods, Inc.*, No. 14-CV-169-L-NLS, 2015 WL 1411336, at *18 (S.D. Cal. Mar. 19, 2015) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (noting where composition of the product is less important, "cases turn on whether the alleged misrepresentations are sufficiently similar across product lines")).

In a similar case, this Court found that the plaintiff had standing to sue on behalf of purchasers of other Nordstrom Rack items with "Compare At" tags because "the characteristics and format that Plaintiff complains of remain consistent across such tags." *Branca v. Nordstrom, Inc.*, No. 14-CV-2062-MMA-JMA, 2015 WL 10436858, at *5 (S.D. Cal. Oct. 9, 2015). The Court noted that "all of the products are marketed to the same consumers, Nordstrom Rack shoppers. Thus, product composition is of little importance and the similarity amongst the purported misrepresentations is most important[.]" *Id.*

Moreover, numerous district courts have also concluded that a plaintiff has standing to sue on behalf of items he or she did not purchase if the alleged misrepresentations are sufficiently similar. *See Dennis*, 2017 WL 3732103, at *7 (concluding that the plaintiff "has demonstrated sufficient similarities in the Defendants' alleged pricing scheme to avoid dismissal of any claims at this stage of the

proceedings."); *Azimpour v. Sears, Roebuck & Co.* ("*Azimpour II*"), No. 15-CV-2798-JLS-WVG, 2017 WL 1496255, at \*5 (S.D. Cal. Apr. 26, 2017) (finding that the "Plaintiff has standing to sue on behalf of purchasers of other Sears items bearing in-store price tags similar to those relied upon by Plaintiff because he is challenging the pricing scheme, not the product."); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1001 (N.D. Cal. 2012) (finding that although the plaintiff purchased only two of the many flavors of smoothie kits, the plaintiff had standing to bring claims on behalf of purchasers of the other flavors because "the same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor; all smoothie kits [were] labeled 'All Natural,' and all smoothie kits contain[ed] allegedly non-natural ingredients."); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at \*13 (N.D. Cal. July 20, 2012) (concluding that the plaintiffs had standing to sue based on flavors of ice cream they did not purchase because many of the contested ingredients were the same across all of the ice creams at issue and their labels were nearly identical).

Defendants rely primarily on *Nunez v. Saks Inc.* ("*Nunez II*"), where the district court dismissed the plaintiff's complaint with prejudice. No. 15-CV-2717-JAH-WVG, 2017 WL 5973341, at \*5 (S.D. Cal. Dec. 1, 2017). There, the plaintiff sought to represent a class of individuals "who purchased a Saks Fifth Avenue labeled product from OFF 5TH locations in California after being exposed to material from Saks's marketing campaigns." *Id.* at \*3. In dismissing the plaintiff's first amended complaint, the court found that the plaintiff lacked standing to assert claims on behalf of individuals who purchased different items because the plaintiff failed to support his allegation of a "misleading and deceptive pricing scheme" with allegations of his own "exposure to misleading advertising[.]" *Nunez v. Saks Inc.* ("*Nunez I*"), No. 15-CV-2717-JAH-WVG, 2017 WL 1184058, at \*5 (S.D. Cal. Mar. 22, 2017). In dismissing the plaintiff's third amended complaint with prejudice, the district court briefly concluded that the "Plaintiff's TAC did not remedy the deficiencies of the FAC." *Nunez II*, 2017 WL 5973341 at \*4; *see also Johns v. Bayer Corp.*, No. 9-CV-1935-DMS-JMA, 2010 WL

476688, at * (S.D. Cal. Feb. 9, 2010) (concluding the plaintiff lacks standing because "he cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product he did not rely upon.").

A recent decision from this district is particularly instructive on this issue. In *John v. AM Retail Group, Inc.*, the same judge that decided *Nunez* found that the primary reason for dismissal, "and the distinguishing factor between *Nunez* and the present case, was that the *Nunez* plaintiff sought to bring claims for a wide range of deceptive advertising—print, in-store, and online—yet failed to allege his own personal exposure to that misleading advertising, even for the shoes that he purchased." No. 17-CV-JAH-BGS, 2018 WL 1400718, at *4 (S.D. Cal. Mar. 20, 2018). The court noted that in contrast, the allegedly deceptive advertising alleged by the plaintiff in *John* "is far less comprehensive, only including Defendant's in store signage that purported to offer a substantial discount off of the 'Ticket' price." *Id.* Additionally, the plaintiff "actually alleged that he was exposed to the deceptive advertising and affirmatively relied on such when making his purchase decision." *Id.* The court concluded that the plaintiff's allegations "are sufficient to distinguish this case from *Nunez*." *Id.*

Here, Plaintiff alleges that "most, if not all Fossil Outlet Products sold in the Fossil Outlet Stores are subject to the *same* fraudulent pricing scheme[.]" FAC ¶ 10 (emphasis added). Moreover, Plaintiff's investigation revealed that "Defendants' deceptive advertising practices were *systematic* and *pervasive* at Fossil Outlet Stores as Fossil Outlet Products remain continuously discounted from the Reference Price listed on the tag price or they are not offered for sale at their Reference Price . . . for any substantial period of time, and in most cases, not at all[.]" *Id.* ¶ 40 (emphasis added). Unlike *Nunez II*, Plaintiff alleges that he seeks to represent individuals who were exposed to the same type of in-store, deceptive advertising and labeling that he was exposed to. Thus, Plaintiff's allegations are more analogous to *John* because the deceptive advertising alleged only included Defendants' in-store signage offering discounts from the price listed on the products' price tags. *Id.* ¶ 6.

Moreover, similar to *Branca*, Plaintiff's claims do not depend on what type of product an individual purchased from a Fossil Outlet Store. Nor do Plaintiff's allegations "relate to the exact prices, percentages of savings listed on the tags, or specific characteristics of the underlying products, which would vary by product." *Branca*, 2015 WL 10436858, at *5.[5] Rather, Plaintiff's claims depend on Fossil Outlet Products bearing the Like Style tags, and the surrounding in-store signage, similar to those relied upon by Plaintiff. Plaintiff challenges the alleged pricing scheme—not the actual product sold by Fossil Outlet Stores or the exact price or percentage of savings listed on the product's tag.

Accordingly, the Court finds that Plaintiff has standing to sue on behalf of purchasers of other Fossil Outlet Products with uniform price tags and in-store signage that purported to offer a substantial discount because Plaintiff is challenging "the same basic mislabeling practice" across products. *Astiana*, 2012 WL 2990766, at *13; *see also Dennis*, 2017 WL 3732103, at *7 ("Defendants' contentions regarding the differences in purchases and advertisements are best addressed at the class certification stage rather than the motion to dismiss stage.").

3. <u>Plaintiff's Standing to Seek Injunctive Relief</u>

Third, Defendants assert that Plaintiff lacks standing to seek injunctive relief

---

[5] Defendants urge the Court to "follow its decisions in *Oxina* and *Alaei* rather than *Branca*[.]" Doc. No. 11-1 at 7 n.1. Both cases, however, are inapposite. In *Oxina v. Lands' End, Inc.*, this Court found that the plaintiff lacked standing to bring claims on behalf of all purchasers of the defendant's apparel because the purported misrepresentation—"Made in USA"—was listed on the defendant's website and the Court could not distinguish which items the "Made in USA" statement was mistakenly applied to and where each item of apparel also had its own unique physical tag that affected the Court's assessment of the statement on the website. No. 14-CV-2577-MMA-NLS, 2015 WL 4272058, at *6 (S.D. Cal. June 19, 2015). Thus, unlike this case, the purported misrepresentations as well as the products themselves varied from item to item. Moreover, in *Alaei v. Kraft Heinz Food Co.*, a case where the composition of the product, in addition to the product's advertising, was at issue, the Court found that based upon the plaintiff's allegations, it could not "determine whether the unpurchased products are sufficiently similar to Heinz 57 Sauce to confer standing upon Plaintiff[.]" No. 15-CV-2961-MMA-DHB, U.S. Dist. LEXIS 63914, at *8 (S.D. Cal. Apr. 22, 2016). Here, however, Plaintiff's exhibits demonstrate that Fossil Outlet Stores utilized the same allegedly deceptive labeling practice across numerous products—not just the product Plaintiff purchased. *See* FAC, Exhs. A-E.

because he is no longer at risk of being deceived by Fossil's "Like Style" pricing. Doc. No. 11-1 at 8. Plaintiff contends that consumers can have standing to seek injunctive relief under the UCL, despite having learned of the wrongful conduct at issue. *See* Doc. No. 13 at 22.

To establish Article III standing, a plaintiff must show that he or she suffered an "injury in fact," that the injury is "fairly traceable" to the challenged conduct, and that it is "likely" and not just "speculative" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish an injury in fact, the harm suffered by a plaintiff must be "concrete and particularized," *id.* at 560, and there must be "a sufficient likelihood that [he or she] will again be wronged a similar way," *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). A plaintiff "must establish a 'real and immediate threat of repeated injury.'" *Bates*, 511 F.3d at 985 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

The Ninth Circuit recently addressed the split of authority among district courts regarding whether a plaintiff, who seeks to enjoin a seller or manufacturer from making false or misleading misrepresentations about an item the plaintiff previously purchased, must be able to establish that he would likely purchase the item again to satisfy the standing requirement. *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017). In *Davidson*, the Ninth Circuit held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent . . . threat of future harm." *Id.* at 1115 (internal quotation marks and citations omitted). The Ninth Circuit noted that in some cases, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product she would like to." *Id.* In other cases, "the threat of future harm may be the consumer's plausible allegations that

she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* "Either way, we . . . are not persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false." *Id.* (internal quotation marks and citation omitted) (emphasis in original).

Here, Plaintiff alleges that he "would not have made such purchase, but for Defendants' false representations and fraudulent omissions of the Reference Price of the item he purchased, as compared with the supposedly discounted price at which the Fossil Outlet Store offered the item for sale." FAC ¶ 16. Moreover, Plaintiff claims he "would purchase Defendants' products in the future . . . if price tags accurately reflect 'former' prices and discounts." *Id.* ¶ 49. However, Plaintiff, and other consumers, currently "have no realistic way to know which—if any—of Defendants' price tags and sale prices are not false or deceptive." *Id.* Accepting Plaintiff's allegations as true, the Court finds that Plaintiff sufficiently alleges that he desires to purchase Fossil Outlet Products, but does not purchase such products because he has no way of knowing whether Defendants' price tags and sale prices are deceptive. Similar to *Davidson*, such allegations "constitute[] a 'threatened injury [that is] certainly impending,' thereby establishing Article III standing to assert a claim for injunctive relief." 873 F.3d at 1116 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)); *cf. John*, 2018 WL 1400718, at *7 (finding the plaintiff lacks standing to assert claims for injunctive relief because the plaintiff's "sole allegation pertaining to the prospect of future harm is that he may in the future shop at Defendant's outlet store.") (internal quotation marks omitted).

Accordingly, the Court finds that Plaintiff has standing to pursue injunctive relief. *See Davidson*, 873 F.3d at 1115-16 ("Were injunctive relief unavailable to a consumer who learns after purchasing a product that the product's label is false, California's consumer protection laws would be effectively gutted[.]").

## II.  Motion to Dismiss Pursuant to Rules 9(b) and 12(b)(6)

In his FAC, Plaintiff alleges that Defendants engage in a misleading and deceptive

pricing scheme by representing, on the price tags of Fossil Outlet Products, prices that "were overstated and did not represent a bona fide price at which Fossil Outlet Products were previously sold." FAC ¶ 6. "Defendants convey their deceptive pricing scheme through in store signage offering steep discounts from the Reference Price listed on the products' price tags in the Fossil Outlet Stores," which are "fake reference prices" and "utilized only to perpetuate Defendants' fake-discount scheme." *Id.* ¶ 7. Defendants move to Dismiss Plaintiff's FAL, UCL, and CLRA claims under Rules 12(b)(6) and 9(b), and further contend that Plaintiff is not entitled to equitable relief or restitution. The Court considers each argument in turn.

    1. <u>Legal Standards</u>

        *a. California's FAL, UCL, and CLRA*

    California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. The FAL provides, in relevant part:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. "This statute makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]'" *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1023–24 (N.D. Cal. 2011) (internal citation omitted). "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. . . . Consequently, even a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant

information, is actionable under this section." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (internal citations, quotations, and alterations omitted).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under each of the three prongs: "unlawful," "unfair," and "fraudulent." *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007)). "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition." *Hinojos*, 718 F.3d at 1103. Accordingly, any violation of the FAL also violates the UCL. *Williams v. Gerber Prods.Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002)).

Lastly, California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Specifically, the CLRA prohibits, among other things, "[a]dvertising goods or services with intent not to sell them as advertised" and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

### b. The Reasonable Consumer Test

To state a claim under the FAL, UCL, or the CLRA, a plaintiff must allege that the defendant's purported misrepresentations are likely to deceive a reasonable consumer. *See Williams*, 552 F.3d at 938 (explaining that unless the advertisement at issue targets a particularly vulnerable group, courts must evaluate claims for false or misleading advertising from the perspective of a reasonable consumer). "A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161-62 (9th Cir. 2012) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (Ct. App. 2006)). "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *In re*

*Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Rather, "the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508.  "In determining whether a statement is misleading under the statute, the primary evidence in a false advertising case is the advertising itself." *Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062, 1092 n.20 (N.D. Cal. 2013) (quoting *Colgan*, 135 Cal. App. 4th at 679) (internal quotation marks omitted).

As a general matter, courts applying the reasonable consumer test to businesses' use of comparative reference prices have distinguished between two categories: "exclusive product" cases and "non-exclusive product" cases. *Sperling v. Stein Mart, Inc.*, --F. Supp. 3d--, No. 15-CV-1411-AB-KKx, 2018 WL 1214736, at *5 (C.D. Cal. Feb. 23, 2018).  In exclusive product cases, a store, usually an outlet store, "sells a lower-price, different version of a product sold in a traditional retail store." *Id.* at *6.  "The outlet uses the price of the product made for the retail store as a comparative reference price on price tags" but the product actually sold in the outlet store "is made exclusively for the outlet and is never sold for the comparative reference price at a traditional retail store." *Id.*  In contrast, in non-exclusive product cases, "more than one retailer offers the product at issue for sale.  Because other retailers offer the same product for sale, there are legitimate prices to which to compare the defendant's comparative reference price." *Id.* In exclusive product cases, "courts generally find that a plaintiff can proceed with his or her claims." *Id.*  This result "makes sense" because in exclusive product cases, where the outlet products "were never sold in traditional retail stores for the comparative reference prices presented on the price tags," it is "deceptive to use the full retail items as price

comparators for those products." *Id.*[6]

2.   Analysis

a.   *Rule 9(b)*

Defendants argue Plaintiff's FAC does not meet the heightened pleading standards under Rule 9(b) because: (1) Plaintiff fails to plead the circumstances of his purchase with particularity; (2) reasonable consumers would not be deceived by the Like Style tags; and (3) Plaintiff does not allege facts to support his claims that Defendants' prices are deceptive.  The Court addresses Defendants' arguments below.

First, Defendants contend that Plaintiff "does not claim to have viewed or relied on 'Like Style' before making his purchase, does not claim where he saw any such representation, and does not state how he interpreted this phrase, or identify any other statement that he found material."  Doc. No. 11-1 at 11.  Thus, Defendants claim that Plaintiff fails to allege the who, what, when where, and how of the alleged misconduct.

The Court finds Plaintiff's allegations are sufficient to support his claim that the Like Style tags are deceptive.  In his FAC, Plaintiff alleges that on November 16, 2016 (the "when"), Plaintiff (the "who") purchased a Travis Workbag, Style SBG1136200 at a Fossil Outlet Store in Carlsbad, California (the "where").  *See* FAC ¶¶ 34-37.  Plaintiff claims that Defendants misled customers through the prices on the Like Style tags and in-store signage (the "what").  *Id.* ¶ 37.  Regarding the "how," Plaintiff further alleges that the Travis Workbag had a price tag attached to it, bearing a price of $198.00.  *Id.* ¶ 36.  Plaintiff also "observed signage" at the store "above the subject item" which represented that the bag was on sale for "40% Off Ticketed Price" and another sign indicating "20%

---

[6] Defendants argue that Plaintiff "ignores" the Ninth Circuit's recent and "significant decision" in *Sperling v. DSWC, Inc.* ("*DSW*"), 699 F. App'x 654 (9th Cir. 2017), and instead focuses on the Ninth Circuit's 2017 *Rubenstein* decision, "which was decided before *Sperling* and runs contrary" to *In re GlenFed, Inc., Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) (en banc) and its progeny.  Doc. No. 14 at 4. The Court disagrees.  Defendants fail to note that *DSW*, unlike *Rubenstein*, is a non-exclusive product case.  *See Sperling*, --F. Supp.--, 2018 WL 1214736, at *6-7 (noting that *Rubenstein* is an exclusive product case, while *DSW* is a non-exclusive product case).  Thus, because this is an exclusive product case, Plaintiff's reliance on *Rubenstein* is appropriate.

Off" entire purchase price. *Id.* ¶¶ 37, 34. Plaintiff alleges that he "reasonably believed the truth of the represented price attached to the price tag[.]" FAC ¶ 17. Believing that he "was receiving a significant discount from the Reference Price listed on the price tag by purchasing the bag, Plaintiff decided to purchase the item and proceeded to the cash register where he did in fact purchase the item." *Id.* ¶ 38.

Defendants emphasize that Plaintiff does not claim to have relied on the phrase "Like Style" before making his purchase or "identify any other statement that he found material." Doc. No. 11-1 at 11. Defendants rely primarily on *Chase v. Hobby Lobby Stores, Inc.* ("*Chase I*") in support of this argument. No. 17-CV-881-GPC-BLM, 2017 WL 4358146 (S.D. Cal. Oct. 2, 2017). In *Chase I*, the plaintiff purchased a photo frame after observing a sticker listing the "Marked" price as $17.99, and a placard next to the photo frame that stated "Photo Frames 50% OFF the Marked Price." *Id.* at *1. The defendant introduced as an exhibit the placard which the plaintiff referenced in her complaint, which stated "Photo Frames ALWAYS 50% OFF THE MARKED PRICE*." *Id.* at *8. The asterisk directed consumers to a disclaimer in smaller print on the placard that stated "DISCOUNTS PROVIDED EVERY DAY; MARKED PRICES REFLECT GENERAL U.S. MARKET VALUE FOR SIMILAR PRODUCTS." *Id.* In concluding that the plaintiff did not sufficiently allege the "how" of the defendant's alleged misrepresentation, the court explained that the plaintiff did not plead whether she saw the word "ALWAYS," whether she saw the asterisk, or whether she even read the disclaimer at issue. *See id.* at *8-9.

*Chase I*, however, is distinguishable for several reasons. First, the court did not find that the plaintiff failed to sufficiently allege the "how" of the misrepresentation by failing to address how she interpreted the term "Marked" on the price tag. Rather, the court focused on the language printed on the placard. Second, unlike *Chase I*, there is no lengthy disclaimer or asterisk directing Plaintiff to language expressly stating that the price listed on the price tag reflects the "VALUE FOR SIMILAR PRODUCTS." *Id.* at *8. The photos of Defendants' in-store signage, attached as exhibits to the FAC, state

"TAKE 50% OFF LOWEST TICKETED PRICE" and "SALE $129." FAC Exhs. A, C. Third, Plaintiff attaches a true and correct copy of the price tag attached to the bag that he purchased on November 16, 2016. *See* FAC, Exh. E. Below the "$198.00" figure, the price tag includes the phrase "LIKE STYLE." *Id.* Plaintiff expressly alleges that after reviewing the price tag attached to the Travis Workbag, he believed the price tag referred to the regular ticketed price of the item. FAC ¶¶ 17, 37-38. Plaintiff "understood the Reference Price representation to indicate a true former price of the identical item, as sold at a mainline Fossil retail store." FAC ¶ 17. Thus, in construing Plaintiff's allegations in the light most favorable to him, Plaintiff read the price tag and concluded that the price listed reflected the regular price of the Travis Workbag. *See Knapp v. Art.com, Inc.*, No. 16-CV-768-WHO, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016) ("Viewed in the light most favorable to the nonmoving party, these allegations are sufficient to plausibly establish that Knapp interpreted the '40% off' language as advertising a discount from Art.com's former prices. Indeed, it is not clear how else Knapp could have reasonably understood the [language.]").

Further, Plaintiff explains that he is not challenging the use of the phrase "Like Style;" rather, Plaintiff challenges Fossil's pricing scheme "whereby Fossil systematically and routinely represented its Fossil Outlet Products as being offered to the consumer at a significant discount, when the purported discounts were, in fact, false." Doc. No. 13 at 12. Thus, the Court is mindful that the gravamen of Plaintiff's claims concern the allegedly deceptive pricing scheme. The Court finds that "[t]he pricing scheme has been alleged with requisite specificity to inform both the Court and Defendant as to the 'who, what, when, where, and how' of the alleged fraud." *John*, 2018 WL 1400718, at *7 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Accordingly, the Court finds that Plaintiff's allegations, at this stage of the proceedings, are sufficient to satisfy Rule 9(b). *See Rubenstein*, 687 F. App'x at 567 (finding that the plaintiff had satisfied 9(b)'s "how" requirements by alleging that the

defendant's use of "Compared To price tags . . . misled consumers into believing that the Compared To prices were charged by either [defendant] or other merchants in the vicinity for comparable products[.]"); *see also John*, 2018 WL 1400718, at *7 (finding the plaintiff has met the Rule 9(b) standard by including the date he purchased the product, the store where he purchased the product, a description of the purchased product, a description of the advertising he relied upon when purchasing the wallet, and pictures attached as exhibits depicting the products and their corresponding advertisements).

Second, Defendants argue that Plaintiff's claims fail under Rule 9(b) because he "does not allege how reasonable consumers would interpret the phrase 'Like Style.'" Doc. No. 11-1 at 13. Specifically, Defendants contend that "reasonable consumers ***would not*** interpret 'Like Style' to mean a former price." *Id.* (emphasis in original).

In *Chase v. Hobby Lobby Stores, Inc.* ("*Chase II*"), the court found that the plaintiff "adequately redressed the deficiencies in her prior complaint" by alleging that she did not notice the word "always" on the placard, nor did she notice or read any disclaimer or other language on the placard. No. 17-cv-881-GPC-BLM, 2018 WL 786743, at *4 (S.D. Cal. Feb. 8, 2018). The court indicated that "[t]aking Plaintiff's alleged facts as true and drawing all reasonable inferences in favor of the plaintiff, . . . it is plausible that a 'reasonable consumer' could have been misled by plaintiff's advertising" and could have believed that the defendant previously sold the item for the marked price. *Id.*

Here, the Court finds that it is plausible that reasonable consumers could understand the prices on the Like Style tags "to be a valid representation of a true former price on the identical product." FAC ¶ 18; *see Stathakos v. Columbia Sportswear Co.*, No. 15-CV-4543-YGR, 2016 WL 173001, at *4 (N.D. Cal. May 2, 2016) (The Court finds that it is facially plausible that plaintiffs and other reasonable consumers would understand the Reference Prices at issue here to refer to former prices for the same product than comparable prices for similar products."). The court in *Chase II* found that reasonable consumers could have been misled by the defendant's advertising even where

a lengthy disclaimer appeared on the in-store signage indicating the photo frames are "ALWAYS" 50% off, and that the marked prices refer to the value of similar products. Here, however, there is no such explicit disclaimer. Defendants claim reasonable consumers would read the price in connection with the "Like Style" language and understand the price to be comparison to the price of a similar item—not a former price for the identical item. *See* Doc. No. 11-1 at 14. The Court is not persuaded. By Defendants' own admission, "[t]he word 'like,' in adjective form, means 'having the *same* or similar qualities.'" *Id.* (emphasis added). Thus, far from Defendants' argument that the meaning of "Like Style" "defies common sense," it is entirely plausible that a reasonable consumer would understand the price listed on the Like Style tags to represent a former price for the *same* item. Doc. No. 14 at 7.

Moreover, as Plaintiff notes, it is not the phrase "Like Style" that Plaintiff challenges. Instead, Plaintiff challenges Defendants' alleged use of a fictitious price on the price tag to inflate the discounts they offer to consumers. *See* Doc. No. 13 at 12-13 n.1. At this stage of the proceedings, the Court finds that it is plausible that reasonable consumers would understand the price listed on the Like Style tags as referring to a former price of the same product. Moreover, "whether [the price tags] actually were misleading is a matter for another day." *Covell*, 2018 WL 558976, at *4. As the Ninth Circuit has noted, "[w]here, as here, the reasonable consumer test applies to a plaintiff's underlying claims, it is a 'rare situation in which granting a motion to dismiss is appropriate.'" *Rubenstein*, 687 F. App'x at 566 (quoting *Williams*, 552 F.3d at 939); s*ee also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (stating that the reasonable consumer standard raises questions of fact that are appropriate for resolution on a motion to dismiss only in "rare situations.").

Third, Defendants claim Plaintiff has not pleaded "any facts" to support his contention that the $198.00 price was inaccurate. Doc. No. 11-1 at 16. As Plaintiff correctly notes, Plaintiff is "not required to plead that [he] has conducted a pre-suit investigation—or include the results of such investigations—in every case, particularly

where the information is not within the personal knowledge of the pleader." *Stathakos*, 2016 WL 1730001, at *4.

With respect to the Travis Workbag Plaintiff purchased allegedly in reliance on the price listed on the Like Style tag and 40% off representation, Plaintiff alleges that the price listed "was never the prevailing market retail price in the preceding 90 days before Plaintiff's purchase." FAC ¶ 40. Moreover, with respect to the class allegations, Plaintiff alleges that "Defendants' deceptive advertising practices were systematic and pervasive at Fossil Outlet Store as Fossil Outlet Products remain continuously discounted from the Reference Price listed on the tag price" or such products "are not offered for sale at their Reference Price (the purported 'Regular Price') for any substantial period of time, and in most cases, not at all[.]" *Id.* Plaintiff alleges that Fossil Outlet Products sold at Fossil Outlet Stores "are designed and manufactured for, and sold *exclusively* by, those stores, which means that such items were never sold—or even intended to be sold—at the Reference Price advertised on the price tags." *Id.* (emphasis in original). Further, Plaintiff did conduct an investigation and attaches to his FAC examples of the products Plaintiff investigated and determined to be continuously discounted from the price listed on the Like Style tags for the preceding 90 days. *See* FAC, Exhs. A-D. Thus, "Defendants' implicit request to engage in merits analysis relative to plaintiff['s] investigation is premature." *Stathakos*, 2016 WL 1730001, at *4.

Accordingly, taking Plaintiff's allegations as true, which the Court must at this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to satisfy Rule 9(b). *See Rael v. New York & Co., Inc.*, No. 16-CV-369-BAS-JMA, 2017 WL 3021019, at *4 (S.D. Cal. July 17, 2017) (concluding that the plaintiff's allegations satisfy Rule 9(b) because they "give[] Defendants notice as to the basis for Plaintiff's claim that the 70% off representation was false, and the information about the discounts offered by Defendants is primarily within the Defendants' knowledge."); *Stathakos*, 2016 WL 1730001, at *4 (finding the plaintiffs' allegations sufficient where the plaintiffs "alleged that there should have been no reference price because the products at issue were

sold exclusively at Columbia Outlet stores and were *not* previously sold at the higher Reference Price at all.") (emphasis in original).

### b. Rule 12(b)(6)

Additionally, Defendants claim that Plaintiff fails to state a claim pursuant to Rule 12(b)(6) under the CLRA, FAL, and UCL. *See* Doc. No. 11-1 at 19-21.

Defendants first argue that Plaintiff fails to state a claim under subdivisions (a)(9) and (a)(13) of the CLRA. *See id.* at 19. Specifically, Defendants claim that Plaintiff fails to state a claim under section (a)(9) because "he does not allege that Fossil falsely advertised the *goods* that he purchased—instead, he merely contends that the *price* for the bag he bought was deceptive." Doc. No. 11-1 at 19 (emphasis in original). Moreover, Defendants assert Plaintiff fails to state a claim under section (a)(13) because "the FAC does not identify any representations by Fossil regarding 'price reductions.'" *Id.* Further, Defendants claim Plaintiff's CLRA claim fails because Plaintiff does not allege he suffered any damage as a result of Defendants' allegedly deceptive pricing scheme.

Section 1770(a)(9) of the California Civil Code prohibits "[a]dvertising goods or services with intent not to sell them as advertised[.]" Cal. Civ. Code § 1770(a)(9). Section 1770(a)(13) prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]" Cal. Civ. Code § 1770(a)(13). Moreover, the CLRA provides relief to a "consumer who suffers any damage as a result of the use or employment by a person of a method, act, or practice declared to be unlawful by Section 1770." Cal. Civ. Code § 1780(a).

Here, the Court finds Plaintiff's allegations are sufficient to state a claim for violations of the CLRA. With respect to § 1770(a)(9), Plaintiff expressly alleges that the misrepresentation at issue pertains to the purported regular price and discounted price falsely advertised across all items sold at Fossil's Outlet Stores. *See* FAC ¶¶ 6-7, 9-10, 98-104. Moreover, with respect to § 1770(a)(13), Plaintiff alleges that the prices listed on the Like Style tags did not accurately reflect a true former price for the same product, and that the purported discounts were false because the product was never sold at the

price listed on the tags.  *See id.* ¶¶ 7, 9-10, 98-104.  Finally, Plaintiff sufficiently alleges that he suffered damage, as he claims he would not have purchased the bag in the absence of Defendants' misrepresentations.  *Id.* ¶ 38; *see Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011) (concluding that a consumer's allegation that "he or she would not have bought the product but for the misrepresentation" is "sufficient to allege economic injury.").

Second, Defendants argue that Plaintiff fails to state a claim under the FAL because Plaintiff does not allege an "untrue or misleading" representation, nor does Plaintiff allege any facts to show that the price on the Like Style tag was not the prevailing price within the preceding 90 days of his purchase.  Doc. No. 11-1 at 20.  However, the FAC alleges specific representations and why those representations are false and misleading that are sufficient to state a claim for violations of the FAL.  *See* FAC ¶¶ 6-10, 89-97.

Third, Defendants assert that Plaintiff fails to state a claim under the UCL's "unfairness" or "unlawfulness" prongs because Plaintiff has not alleged any conduct by Fossil that offends an established public policy or that violates any underlying law.  *See* Doc. No. 11-1 at 20.  With respect to the "unlawfulness" prong, because the Court finds that Plaintiff sufficiently alleges a violation of the FAL and the CLRA, "Plaintiff also adequately alleges a violation of the UCL 'unlawful' prong."  *Rael*, 2017 WL 3021019, at *5; *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999) ("By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (internal quotation marks and citation omitted)).

With respect to the "unfairness" prong, the California Supreme Court has defined the word "unfair" under the UCL to mean conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech*, 973 P.2d at 544.  Lower courts, however,

"have struggled to apply these rules in the context of consumer cases." *Rael*, 2017 WL 3021019, at \*5. Many courts utilize a three-part test set forth by the appellate court in *Camacho v. Auto. Club of S. Cal.*, 48 Cal. Rptr. 3d 770, 777 (Cal. Ct. App. 2006). Under this test, courts consider factors including: (1) whether the consumer injury is substantial; (2) whether the injury is outweighed by any countervailing interests; and (3) whether the injury is one that consumers themselves could not reasonably have avoided. *See id.* Notably, "[w]hether a practice is . . . unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 321 (Cal. Ct. App. 2012) (internal quotation marks and citations omitted).

Here, Plaintiff alleges that the prices represented on the price tags were overstated and did not reflect a bona fide price at which the products were sold. FAC ¶ 6. Additionally, Plaintiff alleges that the advertised prices were not prevailing market retail prices within the three months immediately preceding the publication of the advertised prices. *Id.* Further, Plaintiff alleges that he, "like other Class members, was lured in, relied on, and was damaged by these pricing schemes that Defendants carried out." *Id.* ¶ 18. Thus, taking Plaintiff's allegations as true, the Court finds that Plaintiff has alleged Defendants engaged in conduct sufficient to meet the "unfair" prong as defined in *Camacho*. *See Rael*, 2017 WL 3021019, at \*5 ("At this stage of the proceedings the Court finds Plaintiff's allegations that Defendants' false sales substantially injured consumers by inducing them to buy products they would not otherwise have purchased . . . is sufficient to meet the 'unfair' prong as defined in *Camacho*.").

### c. *Equitable Relief and Restitution*

Defendants further argue that Plaintiff "is not entitled to any of the relief he seeks." Doc. No. 11-1 at 21. Specifically, Defendants claim Plaintiff's claim for equitable relief under the UCL, FAL, and CLRA fails and that Plaintiff is not entitled to restitution.

Defendants first contend that Plaintiff's claims for equitable relief under the UCL, FAL, and CLRA fail because "Plaintiff does not allege that he lacks an adequate remedy

at law." Doc. No. 11-1 at 21. Defendants claim "Plaintiff's CLRA damages claim prevents him from establishing that there is no adequate remedy at law available to him." *Id.* at 21-22. Thus, Defendants request the Court dismiss Plaintiff's request for equitable relief. Plaintiff argues that he is entitled to plead equitable relief in the alternative at the pleading stage, and that he sufficiently alleges the necessity for equitable relief where an award of damages alone would not rectify the harm. Doc. No. 13 at 20.

District courts are split on whether a plaintiff's claims for equitable relief should be dismissed at the pleading stage. *Compare Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1204 (N.D. Cal. 2017) (dismissing the plaintiff's claims for equitable relief because the plaintiff has an adequate remedy at law), *with Covell*, 2018 WL 558976, at *8 (declining to dismiss the plaintiff's claims for equitable relief at the pleading stage). As Plaintiff points out, Section 17205 of the Business and Professions Code states that unless "otherwise expressly provided, the remedies or penalties provided by [the UCL] are *cumulative* to each other and to the remedies or penalties available under all other laws of [California]." Cal. Bus. & Prof. Code § 17205 (emphasis added). "Put simply, a plaintiff seeking damages is not automatically precluded from obtaining UCL relief." *Covell*, 2018 WL 558976, at *7. One district court recently explained that "plaintiffs may seek injunctive and/or restitutionary equitable relief separate and apart from the same underlying claims . . . in which plaintiffs seek monetary damages." *Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017).

Here, the Court finds persuasive the *Covell* court's reasoning. In *Covell*, the court explained that "[i]f Plaintiff ultimately prevails on her claims, she will still need to show that equitable relief is the only way to remedy a specific type of injury suffered by herself or the class. However, she may be able to do so by, for example, arguing that injunctive relief is the only way to protect the class from future deceptive behavior." 2018 WL 558976, at *8; *see also Aberin v. Am. Honda Motor Co.*, No. 16-CV-4384-JST, 2018 U.S. Dist. LEXIS 49731, at *26 (N.D. Cal. Mar. 26, 2018) ("This Court joins the many other courts, however, that have reached the opposite conclusion, finding no bar to the

pursuit of alternative remedies at the pleading stage."); *Adkins v. Comcast Corp.*, No. 16-CV-5969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) ("[T]his Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleading stage."). Plaintiff expressly alleges that "[t]his deception will continue if Defendants are not enjoined from continuing their pricing scheme." FAC ¶ 18; *cf. Gomez v. Jelly Belly Candy Co.*, No. 17-CV-575-CJC-FFM, 2017 U.S. Dist. LEXIS 134188, at *4 (C.D. Cal. Aug. 18, 2017) (noting that the plaintiff "has not even alleged facts that could support a future finding that monetary relief is insufficient to compensate her for the alleged harm."). Accordingly, the Court "declines to dismiss Plaintiff's claims for equitable relief." *Covell*, 2018 WL 558976, at *8.

Second, Defendants assert that Plaintiff is not entitled to restitution because Plaintiff "does not allege that the bag he purchased was damaged or otherwise worth less than what he paid[.]" Doc. No. 11-1 at 25. Plaintiff argues that Defendants' challenge is misplaced and that Defendants are attempting "to elevate the pleading standard to require Plaintiff to presently identify and commit to a restitution calculation method." Doc. No. 13 at 23.

Courts have "very broad discretion to determine an appropriate remedy as long as it is supported by the evidence and is consistent with the purpose of restoring the plaintiff the amount that the defendant wrongfully acquired." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013). "The court's discretion is not entirely unbounded, however, because 'restitution under the [UCL and FAL] must be of a measureable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measureable amount must be supported by evidence.'" *Russell v. Kohl's Dep't Stores, Inc.*, No. 15-CV-1143-RGK-SPx, 2015 WL 12781206, *2 (C.D. Cal. Oct. 6, 2015) (quoting *Colgan*, 135 Cal. App. 4th at 698).

Here, Plaintiff alleges that he "would not have purchased the bag in the absence of Defendants' misrepresentations." FAC ¶ 38. "Defendants have been unjustly enriched at

the expense of Plaintiff and members of the proposed class." *Id.* ¶ 76. Thus, Plaintiff seeks "restitution and other appropriate equitable remedies, including an injunction under the UCL and FAL; and restitution, damages, and injunction under the CLRA." *Id.* ¶ 21. These allegations are "sufficient to state a claim for restitution under the UCL." *Azimpour II*, 2017 WL 1496255, at *9. "[W]hether Plaintiff can submit sufficient evidence of a measurable amount of restitution is a premature determination at the pleading stage." *Id.*; *see also John*, 2018 1400718, at *8 (denying the defendant's motion to dismiss the plaintiff's claims for restitution where the plaintiff alleged that he would not have purchased the wallet without the misrepresentation made by the defendant, and that the defendant was unjustly enriched as a result of selling merchandise offered at a false discount); *Russell*, 2015 WL 12781206, at *5 ("Even though Plaintiffs have not alleged that the price they paid exceeds the value of the merchandise they purchased, they have still alleged sufficient facts to support a claim for restitution under the UCL and FAL.").

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' motion to dismiss in its entirety.


**IT IS SO ORDERED.**


Dated: April 9, 2018

HON. MICHAEL M. ANELLO
United States District Judge